## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,      )
          )
         Plaintiff,      )
          )
-vs-                 )     Case Nos. CR-22-0049-001-F
          )               CIV-24-1081-F
URIEL OCHOA-SANTOS,      )
          )
         Defendant.      )

## ORDER

Defendant, Uriel Ochoa-Santos, a federal inmate proceeding *pro se*, has moved under 28 U.S.C. § 2255 to vacate, set aside, or correct his federal sentence. Doc. no. 163.[1]  Plaintiff, United States of America, has responded to the motion. Doc. no. 171.  Although defendant was allowed to file a reply to the government's response, no reply has been filed within the time specified by the court.  The matter is at issue.

### I.

### *Procedural History*

On February 15, 2022, defendant was charged by indictment with drug offenses.

Count 1 of the indictment charged that, on or about January 19, 2022, in the Western District of Oklahoma and elsewhere, defendant and two co-defendants, Fletcher Martinez Henderson and Rafael Navarro, Jr., knowingly and intentionally conspired, combined, confederated, and agreed with each other and others, both

---

[1] Because defendant is proceeding *pro se*, the court construes his filings liberally, but it does not act as his advocate.  *See*, Yang v. Archuleta, 525 F.3d 925, 927 n. 1 (10th Cir. 2008).

known and unknown to the Grand Jury, to interdependently possess with intent to distribute and to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1), all in violation of 21 U.S.C. § 846, the penalty for which is found at 21 U.S.C. § 841(b)(1)(A). *See*, doc. no. 57, ECF pp. 1-2.

Count 2 of the indictment charged that, on or about January 19, 2022, in the Western District of Oklahoma, defendant knowingly and intentionally possessed with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers, a Schedule II controlled substance, all in violation of 21 U.S.C. § 841(a)(1), the penalty for which is found at 21 U.S.C. § 841(b)(1)(A). *See*, doc. no. 57, ECF p. 2.

At all relevant times, defendant was represented by appointed counsel, Cesar Armenta.

On September 22, 2022, a one-count Superseding Information was filed charging defendant with knowingly and intentionally possessing with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers, a Schedule II controlled substance, all in violation of 21 U.S.C. § 841(a)(1), the penalty for which is found at 21 U.S.C. § 841(b)(1)(B). *See*, doc. no. 94.

Subsequently, on October 12, 2022, defendant, pursuant to a plea agreement, pleaded guilty to the one-count Superseding Information. *See*, doc. no. 104. During the plea hearing conducted by the Honorable Chief Judge Timothy D. DeGiusti, defendant admitted that on January 19, 2022, he was "driving a car that contained approximately 68 pounds of a mixture containing a detectable amount of methamphetamine[;]" he was "aware that that methamphetamine was in the car[;]" and it was his "intent to distribute or participate in the distribution of that

2

methamphetamine to others[.]" Doc. no. 171-2, ECF p. 13, ll. 19-25, ECF p. 14, ll. 1-4.

As part of the plea agreement, the government and defendant agreed and stipulated that "for the purposes of sentencing, the amount of a mixture or substance containing a detectable amount of methamphetamine associated with Defendant's relevant conduct in this case is a least 15 kilograms but less than 45 kilograms of a mixture or substance containing methamphetamine as described by U.S.S.G. § 2D1.1(c)(2)." Doc. no. 106, ECF p. 6, ¶ 10.[2]

In addition, as part of the plea agreement, defendant waived the right to appeal his conviction and his sentence, with one exception not relevant to this case. He also waived his right to collaterally challenge under 28 U.S.C. § 2255 his conviction or his sentence, "except with respect to claims of ineffective assistance of counsel." Doc. no. 106, ECF p. 8, ¶¶ 12(a), 12(b), and 12(c).

During the plea hearing, Judge DeGiusti asked defendant if he understood that as a result of the plea agreement, he was waiving the right to collaterally challenge the sentence ultimately imposed by the court except under limited circumstances, to which defendant responded affirmatively. Doc. no. 171-2, ECF p. 8, ll. 11-17. At the request of Judge DeGiusti, the government summarized the terms of the plea agreement, which included the above stipulation and waiver of appeal, and the defendant advised Judge DeGiusti that he agreed to the summary. Doc. no. 171-2, ECF p. 12, ll. 4-11, ECF p. 13. Judge DeGiusti asked defendant whether any promise had been made by anyone which caused him to plead guilty other than the promises set forth in the plea agreement, and he responded, "No." Doc. no. 171-2, ECF p. 13, ll. 11-15.

---

[2] "U.S.S.G" stands for United States Sentencing Guidelines.

In addition to the plea agreement, defendant completed a petition to enter plea of guilty.  Defendant acknowledged in that document that in calculating the range of sentence under the advisory sentencing guidelines, the court would take into account "all conduct, circumstances, and injuries associated with [his] criminal conduct, whether or not this conduct is formally charged by the government" and the court would consider "all relevant conduct at the time of sentencing[.]"  Doc. no. 105, ECF p. 7, ¶ 26.  He also acknowledged that his "history of prior criminal convictions will be used to compute [his] Criminal History Category under the Sentencing Guidelines" and that his "prior criminal history has a direct impact on the calculation of the sentencing range under the advisory Sentencing Guidelines." *Id*. at ¶ 29.

During the plea hearing, Judge DeGiusti asked defendant if he signed the petition to enter the plea of guilty, if he read the document or had it read to him before he signed it and if he understood all the questions in the document.  Defendant responded affirmatively.  Doc. no. 171-2, ECF p. 9, ll. 7-21.  Judge DeGiusti also asked defendant if he realized that if the court accepted his plea, the court may impose the same punishment as if he had pleaded not guilty and had been convicted by a jury, to which defendant responded affirmatively.  Id. at ECF p. 9, ll. 22-25; ECF p. 10, l. 1.  Further, defendant responded affirmatively when asked by Judge DeGiusti if he understood that the court would consider all relevant conduct at the time of sentencing.  ECF p. 171-2, ECF p. 10, l. 10; ECF p. 11, 1-3.

Thereafter, the Probation Office prepared a final presentence investigation report which calculated defendant's base level offense at 36 pursuant to U.S.S.G. § 2D1.1(a)(5), based upon a finding that defendant's offense involved 68.6 pounds (31.1 kilograms) of methamphetamine.  The Probation Office then applied a two-level enhancement pursuant to U.S.S.G. § 3C1.2 because defendant "recklessly created a substantial risk of death or serious bodily injury to another person in the

course of fleeing from a law enforcement officer," resulting in an adjusted offense level of 38.  Doc. no. 133, ECF p. 6, ¶¶ 25-26.  After applying a three-level adjustment under U.S.S.G. § 3E1.1, the Probation Office calculated defendant's total offense level at 35.  *Id*., ECF pp. 6-7, ¶¶ 28-30.

Based on his prior convictions, defendant received a criminal history score of nine, establishing a criminal history category of IV.  With a total offense level of 35 and a criminal history category of IV, defendant's advisory guideline imprisonment range was 235 months to 293 months.  *See*, doc. no. 133, ECF p. 9, ¶¶ 36-37; ECF p. 13, ¶ 62.

Prior to sentencing, defense counsel filed a 19-page sentencing memorandum, requesting the court to "consider a sentence substantially below the advisory guideline range."  Doc. no. 143, ECF p. 18.

Defendant's sentencing was held on October 17, 2023.  *See*, doc. no. 159.  At the hearing, the court adopted the final presentence investigation report without change.  *See*, doc. no. 162, ECF p. 1, I (A).  The court varied downward from the advisory guideline imprisonment range and sentenced defendant to a term of imprisonment of 190 months.  *See*, doc. no. 159.  The court also imposed supervised release of five years.  *Id*.  Judgment was entered that same day.  *See*, doc. no. 161.  The indictment originally filed against defendant was dismissed.  *See*, doc. no. 160.  Defendant did not appeal of his conviction or sentence.

Defendant timely filed the instant § 2255 motion.  He alleges Mr. Armenta rendered constitutionally ineffective assistance of counsel during sentencing and pretrial proceedings.  In addition, defendant alleges that his 190-month sentence was unreasonable, *see*, doc. no. 163, ECF p. 5 (Ground Two); his sentence, as imposed, resulted in a violation of his constitutional rights, *see*, *id.*, ECF p. 7 (Ground Three), and the plea agreement and later acceptance of his guilty plea was "in violation of

due process under the 6th and 14th amendment[s] of the Constitution," *see*, *id*., ECF p. 8 (Ground Four).

## II.

### *Waived Claims*

Initially, in its response, the government asserts that in the plea agreement, defendant waived "all" claims except for claims of ineffective assistance of counsel. Doc. no. 171, ECF p. 6. The court agrees.

As previously stated, defendant waived, as part of the plea agreement, the right to collaterally challenge under 28 U.S.C. § 2255 his conviction or sentence, "except with respect to claims of ineffective assistance of counsel." Doc. no. 106, ECF p. 8, ¶ 12(c). Therefore, on its face, defendant's plea agreement waived the right to collaterally challenge his conviction or sentence with respect to all claims other than claims of ineffective assistance of counsel.

For a waiver to be enforceable, three criteria must be satisfied: (1) defendant's challenge falls within the scope of the waiver provision; (2) defendant's waiver of collateral-challenge rights must have been knowing and voluntary; and (3) enforcement of the waiver must not result in a fundamental miscarriage of justice. *See*, United States v. Hahn, 359 F.3d 1315, 1325-27 (10th Cir. 2004) (en banc) (per curiam); United States v. Cockerham, 237 F.3d 1179, 1183 (10th Cir. 2001) (applying the Hahn analysis to collateral-attack proceedings).

Here, the court finds that all defendant's claims other than claims of ineffective assistance of counsel fall squarely within the scope of the waiver provision. The waiver provision specifically stated that defendant waived his right to collaterally challenge under 28 U.S.C. § 2255 his conviction or sentence, "except with respect to claims of ineffective assistance of counsel." Doc. no. 106, ECF p. 8, ¶ 12(c).

The court also finds that defendant's acceptance of the terms of the waiver was both knowing and voluntary. Just before the signature line of the plea agreement, defendant specifically acknowledged that he had discussed the terms of the plea agreement with his attorney and understood and accepted those terms. Further, during the plea hearing, defendant acknowledged that he understood he was specifically waiving his right to collaterally challenge his sentence. Doc. no. 171-2, ECF p. 8, ll. 11-17.

Further, the court finds that the waiver provision does not result in a fundamental miscarriage of justice. A "miscarriage of justice" occurs only where: (1) "the district court relied on an impermissible factor such as race;" (2) ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid;" (3) "the sentence exceeds the statutory maximum;" or (4) "the waiver is otherwise unlawful." Hahn, 395 F.3d at 1327. There is no showing by defendant or in the record of the existence of any of these factors.

Because the Hahn and Cockerham factors are met, the court concludes that the collateral review waiver is enforceable as to all claims alleged by defendant other than claims of ineffective assistance of counsel. Therefore, the court will only consider the merits of defendant's ineffective assistance of counsel claims.

III.

*Ineffective Assistance of Counsel Claims*

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court laid out the framework for an ineffective assistance of counsel claim. Under it, defendant must show (1) counsel's performance was deficient, meaning it "fell below an objective standard of reasonableness," *id*. at 687-88, and (2) the deficient performance prejudiced the defendant's defense, meaning "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id*. at 694. "A reasonable probability is a probability

sufficient to undermine confidence in the outcome." *Id*.    If the defendant fails to make a sufficient showing at either step of the analysis, the court must deny the alleged ineffective assistance of counsel claim. *Id*. at 697.

Defendant claims that defense counsel was constitutionally ineffective by (1) failing to raise issues of cooperation and prior convictions during the sentencing phase (Ground One); (2) failing to raise the sentencing disparity between him and his co-defendants (Ground Two); (3) failing to contest the amount of drugs determined in the final presentence investigation report (Ground Three); and (4) advising defendant to enter a guilty plea and advising him to accept the plea guilty to prevent a higher sentence than the guideline range to which defendant was exposed (Ground Four).

## A.

As to his first claim, the court finds that defendant has failed to establish that defense counsel performed deficiently.  First, the record reflects that defense counsel did, in fact, raise the issue of defendant's cooperation in the 19-page sentencing memorandum as well as at the sentencing hearing.  Thus, defendant cannot establish that defense counsel's performance fell below an objective standard of reasonableness.  Second, while defense counsel did not object to the inclusion of defendant's prior convictions in determining his criminal history category, defense counsel did not perform below an objective standard of reasonableness in not doing so.  Defendant has not challenged the validity of any of the prior convictions, and any objections to using prior convictions in determining the criminal history category would have been clearly rejected.  *See*, U.S.S.G. § 4A1.1.  Further, in the petition to enter plea of guilty, defendant acknowledged his "history of prior criminal convictions will be used to compute [his] Criminal History Category under the Sentencing Guidelines" and that his "prior criminal history has a direct impact on the calculation of the sentencing range under the advisory Sentencing Guidelines."

Doc. no. 105, ECF p. 7, ¶ 29.  Thus, defense counsel did not perform deficiently in failing to raise an issue as to defendant's prior convictions.

Even if the court were to find defense counsel performed deficiently in failing to raise the issues of cooperation or prior convictions, defendant cannot show prejudice.  He cannot show that his sentence would have been different.

To the extent defendant contends that defense counsel performed deficiently by "guarantee[ing]" that his prior convictions would not be "accounted for if he pleaded guilty," *see*, doc. no. 163, ECF p. 4, the court concludes that defendant cannot show prejudice.  As stated, when he executed the petition to enter plea of guilty, he was made aware that his prior convictions would be used in computing the criminal history category and his prior convictions would directly impact the sentencing range.  In addition, during the plea hearing, Judge DeGiusti specifically asked defendant if any promises had been made by anyone which caused him to plead guilty other than the promises set forth in the plea agreement, and he stated, "No."  Doc. no. 171-2, ECF p. 13, ll. 11-15.  Defendant has not alleged that he would not have pleaded guilty but would have gone to trial in light of defense counsel's "guarantee[]," but even if he did, a mere allegation that defendant would not have pleaded guilty but would have gone to trial, but for defense counsel's error, although necessary, is ultimately insufficient to entitled him to relief.  Miller v. Champion, 262 F.3d 1066, 1072 (10th Cir. 2001).   The court must look to the factual circumstances surrounding the guilty plea to determine whether defendant would have proceeded to trial rather than plead guilty.  *Id*.  By pleading guilty to the one-count Superseding Indictment, defendant obtained the dismissal of Count 1 and Count 2 of the indictment.  Defendant faced a greater sentence had he gone to trial and been convicted on one or both counts of the indictment.  It is highly unlikely, based upon the government's case, that a trial on those counts would have resulted in an acquittal on either count.  It is also—to put it mildly—unlikely that defendant

would have received a light sentence had he gone to trial. The court therefore concludes that defendant has not demonstrated that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694.

B.

With respect to the second claim, the court finds that defendant has failed to establish defense counsel performed deficiently. The record reflects that defense counsel raised the issue of Mr. Navarro's 90-month sentence in the sentencing memorandum and during the sentencing hearing. At the time the sentencing memorandum was filed in June of 2023, Mr. Martinez had not yet been sentenced. Although defense counsel, in his statements during the sentencing hearing, referred only to the 90-month sentence received by Mr. Navarro and asked for a similar sentence for defendant, the court, as acknowledged during the sentencing hearing, was aware of both Mr. Navarro's 90-month sentence as well as Mr. Martinez's 30-month sentence. Because the court was aware of both sentences and considered both sentences in determining defendant's sentence, defense counsel did not perform deficiently by not specifically mentioning Mr. Martinez's 30-month sentence in addition to Mr. Navarro's 90-month sentence.

Even if the court were to find defense counsel performed deficiently, the court concludes that defendant cannot show prejudice. As stated, the court considered Mr. Navarro and Mr. Martinez's sentences when determining defendant's sentence. Defendant would have received the same sentence even if defense counsel had specifically raised the sentencing disparity between defendant and the co-defendants' sentences. As indicated during the sentencing hearing, defendant's circumstances were different than his co-defendants. Indeed, the court commented that Mr. Navarro was "a good example of exceptional acceptance of responsibility." Doc. no. 171, ECF p. 8, ll. 20-21.

10

C.

With respect to the third claim, the court finds that defendant has failed to establish defense counsel performed deficiently. Defendant's base offense level was 36, not 38, as alleged by defendant. And the amount of methamphetamine the Probation Office utilized to calculate defendant's base offense level was "68.6 pounds (31.1 kilograms) of methamphetamine." Doc. no. 133, ECF p. 6, ¶ 21. That amount was within the range that the government and defendant had agreed and stipulated to in the plea agreement to be used for sentencing purposes, namely, "a least 15 kilograms but less than 45 kilograms of a mixture or substance containing methamphetamine[.]" Doc. no. 106, ECF p. 6, ¶ 10. The Probation Office calculated an adjusted offense level of 38 for defendant because the Probation Office applied a two-level enhancement because defendant "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." Doc. no. 133, ECF p. 6, ¶ 25.

Although defendant contends that he only "accepted responsibility of (50) grams of methamphetamine[,]" doc. no. 163, ECF p. 7, the Sentencing Guidelines require that all relevant conduct be considered at sentencing. *See*, U.S.S.G. § 1B1.3. "In particular, "[d]rug quantities associated with illegal conduct for which a defendant was not convicted are to be accounted for in sentencing, if they are part of the same conduct for which the defendant was convicted." United States v. Mendez-Zamora, 296 F.3d 1013, 1020 (10th Cir. 2002). The petition to enter plea of guilty advised defendant of this fact. Defendant also responded affirmatively when asked by Judge DeGiusti at the plea hearing if he understood that the court would consider all relevant conduct at the time of sentencing. As stated, the Probation Office utilized 68.6 pounds or 31.1 kilograms of methamphetamine in calculating the base offense level of 36. Defense counsel was not deficient in failing to object to that amount, when it was within the quantity of drugs the parties agreed and

11

stipulated to in the plea agreement for sentencing purposes.  Further, defendant admitted during the plea hearing that approximately 68 pounds of a mixture containing a detectable amount of methamphetamine was in the car he was driving and that he intended to distribute, or participate in the distribution of, that methamphetamine to others.

D.

Lastly, with respect to the fourth claim, the court finds that defendant has not shown defense counsel performed deficiently.  It is clear from the plea agreement and the plea hearing that the agreement and guilty plea were entered knowingly and voluntarily.  Defendant received a much lower sentence by entering a guilty plea and because of the strong advocacy of defense counsel.

Even if the court were to find defense counsel performed deficiently, defendant cannot show prejudice.  Defendant has not alleged that he would not have pleaded guilty but would have gone to trial in light of defense counsel's "ill advice[,]"  Doc. no. 163, ECF p. 8, but even if he did, the mere allegation that he would not have pleaded guilty but would have gone to trial, but for defense counsel's error, although necessary, is ultimately insufficient to entitled him to relief.  Miller, 262 F.3d at 1072.  As stated, the court must look to the factual circumstances surrounding the guilty plea to determine whether defendant would have proceeded to trial rather than plead guilty.  _Id_.  By pleading guilty to the one-count Superseding Indictment, defendant obtained the dismissal of Count 1 and Count 2 of the indictment.  Defendant faced a greater sentence had he gone to trial and been convicted on one or both counts of the indictment.  As stated, it is highly unlikely, based upon the government's case, that a trial would have resulted in an acquittal on either count.  And as stated, it is—to put it mildly—unlikely that defendant would have received a light sentence had he gone to trial.  The court therefore concludes that defendant has not demonstrated that "there is a reasonable probability that, but

12

for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694.

E.

In sum and for the reasons stated, the court concludes that under the plea agreement, defendant waived collateral challenge under 28 U.S.C. § 2255 of all claims other than his claims of ineffective assistance of counsel and as to each of defendant's claims of ineffective assistance of counsel, they fail on their merits.

IV.

*Evidentiary Hearing*

The court file and record conclusively show that defendant is not entitled to relief under 28 U.S.C. § 2255. A hearing is therefore not warranted. *See*, <u>Sanders v. United States</u>, 373 U.S. 1, 21 (1963) (the sentencing court has discretion to ascertain whether the claim is substantial before granting a full evidentiary hearing in a § 2255 matter).

V.

*Certificate of Appealability*

Under Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts, the court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard, the applicant must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the [motion] should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted). When a § 2255 motion is also denied for procedural reasons, the applicant must clear the added hurdle of showing "that jurists of reason would

13

find it debatable whether the district court was correct in its procedural ruling." *Id*. Upon review, the court finds that defendant cannot make such showing. The court thus denies a certificate of appealability.

## VI.

### *Conclusion*

Accordingly, defendant Uriel Ochoa-Santos's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (doc. no. 163), is **DENIED**. A certificate of appealability is also **DENIED**. Judgment shall be entered forthwith.

IT IS SO ORDERED this 27th day of January, 2025.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

22-0049p028 (Ochoa-Santos).docx

14